# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| **Jeffrey S. Gudes, D.O.** | : | |
| 43487 Prospect Lane | : | |
| Novi, Michigan 48375, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | Case No. |
| | : | |
| **Wilson Health** | : | Judge |
| 915 West Michigan Street | : | |
| Sidney, Ohio 45365 | : | Magistrate Judge |
| | : | |
| and | : | |
| | : | |
| **The Shelby County Memorial** | : | |
| **Hospital Association** | : | **JURY DEMAND** |
| 915 West Michigan Street | : | **ENDORSED HEREON** |
| Sidney, Ohio 45365 | : | |
| | : | |
| and | : | |
| | : | |
| **Wilson Health Foundation** | : | |
| 915 West Michigan Street | : | |
| Sidney, Ohio 45365 | : | |
| | : | |
| and | : | |
| | : | |
| **Robert McDevitt, M.D.** | : | |
| c/o Wilson Health | : | |
| 915 West Michigan Street | : | |
| Sidney, Ohio 45365, | : | |
| | : | |
| Defendants. | | |

## COMPLAINT

For his complaint, plaintiff Jeffrey S. Gudes, D.O., alleges:

## NATURE OF THE CASE

1. This case arises out of the defendants' efforts to defame plaintiff Jeff Gudes and tarnish his reputation in retaliation for his decision to leave Wilson Health. After Dr. Gudes gave

notice of his upcoming departure from Wilson Health to take a new position, defendants caused false and unfounded peer review reports about Dr. Gudes and doubled down by falsely reporting to the National Practitioner Database that Dr. Gudes allowed his privileges to expire while under investigation. In a further attempt to disrupt Dr. Gudes' new employment, Defendant Robert McDevitt falsely told Dr. Gudes' director at his new hospital that Dr. Gudes had behavioral problems and a "bunch of bad cases," and that Dr. McDevitt would never hire him.

2. Because of defendants' actions, the hospital that had offered Dr. Gudes his new position refused to credential him and revoked his offer. On top of that, defendants' false reports have prevented Dr. Gudes from obtaining full-time employment at other hospitals to which he has applied. Because of defendants' actions, Dr. Gudes has suffered significant damages, including lost income, emotional distress, and harm to his reputation.

## PARTIES, JURISDICTION, AND VENUE

3. Plaintiff Jeffrey S. Gudes, D.O., is an individual who is a resident and citizen of Oakland County, Michigan.

4. Defendant Wilson Health is a fictitious name used by one or more of defendant Shelby County Memorial Hospital Association, defendant Wilson Health Foundation, or one or more nonparty entities. By naming the fictious name Wilson Health as a defendant, the plaintiff intends to pursue claims and relief against all entities that use that fictitious name or that used that fictitious name during the times relevant to this matter.

5. Defendant Shelby County Memorial Hospital Association is an Ohio corporation with its principal place of business in Shelby County, Ohio.

6. Defendant Wilson Health Foundation is an Ohio corporation with its principal place of business in Shelby County, Ohio.

7. This Complaint refers to defendants Wilson Health, Shelby County Memorial Hospital Association, and Wilson Health Foundation collectively as the "Wilson Health Defendants."

8. Defendant Robert McDevitt, M.D. is an individual who, upon information and belief, is domiciled in Ohio. Dr. McDevitt is employed by one or more of the Wilson Health Defendants and can be found in or has his principal place of business in Shelby County, Ohio. At all relevant times, Dr. McDevitt was the Chief Medical Officer of Wilson Health and the Chair of the Multidisciplinary Peer Review Committee.

9. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the plaintiff and defendants are citizens of different states and because the amount-in-controversy exceeds the value of $75,000 exclusive of interest and costs.

10. Personal jurisdiction is proper in this Court because the defendants reside in Ohio or are incorporated in and have their principal places of business in Ohio and because the defendants committed a substantial part of the acts giving rise to the claims in Ohio.

11. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1) and (2) because all defendants are residents of Ohio and at least one resides in this district and because a substantial part of the events giving rise to the claims occurred in this district. Alternatively, venue is proper under 28 U.S.C. § 1391(b)(3) because at least one defendant is subject to this Court's personal jurisdiction with respect to this case.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

12. Dr. Gudes is an accomplished physician. He graduated the Lake Erie College of Osteopathic Medicine in 2014 and completed his residency at St. John Hospital in Warren, Michigan. Dr. Gudes is board certified by the American Osteopathic Board of Emergency Medicine.

13. Dr. Gudes accepted employment through a staffing agency at Wilson Memorial Hospital in Sidney, Shelby County, Ohio. Dr. Gudes started at Wilson Memorial in March 2021.

14. Dr. Gudes provided excellent patient care while working for Wilson Health. During his time at Wilson, he was never told of any complaints or concerns about his care. He received favorable reviews, and staff looked forward to working with him because of his quality of care and bedside manner.

15. In the fall of 2021, Dr. Gudes decided to leave Wilson Health and take a position at a hospital system in Florida, where Dr. Gudes preferred to live and work. The new position would offer better economic terms and was overall a more desirable opportunity for Dr. Gudes.

16. On or around November 20, 2021, Dr. Gudes notified the director of his staffing agency that he would be resigning from Wilson Health as of January 31, 2022. Dr. Gudes chose that effective date because he had already scheduled shifts through that date and did not want to leave Wilson Health in a lurch. Dr. Gudes's director in turn notified Wilson Health.

17. In December, Dr. Gudes started applying for his Florida medical license and providing information to his new Florida hospital system to obtain credentialing. One item that Dr. Gudes had to provide is a self-query from the National Practitioner Data Bank, commonly known as the "NPDB."

18. Dr. Gudes's NPDB self-query resulted in a clean check showing "no reports," which he provided to his new hospital system.

19. On or around January 24, 2022, Dr. Gudes received notification that the Medical Executive Committee at Wilson Memorial Hospital had decided to commence a "formal corrective action investigation" of Dr. Gudes' conduct "at the request of the Multidisciplinary Peer Review Committee." But the Wilson Health Defendants did not provide Dr. Gudes any details relating to what exactly the Medical Executive Committee was "investigating." Nor did

4

they request or invite to present information in response to the purported investigation. Nor did they provide Dr. Gudes notice of any right to request a hearing, time limits to do so, or any substantive or procedural rights relating to such a hearing.

20. Dr. Gudes heard nothing further about the purported "investigation" before his last day at Wilson Health or for a substantial time after.

21. In February 2022, the credentialing team at the Florida hospital system told Dr. Gudes of an "abnormality" in his file, something from "an Ohio hospital."

22. Dr. Gudes performed a new NPDB self-query. This time, his NPDB self-query contained a false report by Wilson Health made on or around February 28, 2022. Wilson Health falsely reported that Dr. Gudes had voluntarily surrendered his clinical privileges while under, or to avoid, investigation relating to professional competence or conduct. Wilson Health also falsely stated that the basis for this report was substandard or inadequate care and patient abuse.

23. Because of these false statements to the NPDB, Dr. Gudes was denied credentialing at the Florida hospital system. Dr. Gudes learned of the decision on or around March 2, 2022 and was removed from his shift that day and not allowed to appear for any other scheduled shifts or to schedule new shifts.

24. That same day, Dr. Gudes contacted Becky Reece, the Medical Staff Coordinator at Wilson Hospital, for more information. He received a copy of the January 24 letter notifying him of the purported investigation, but still received no information about any of the peer review cases or detail as to what the purported investigation was about.

25. The next day, Dr. Gudes contacted Ms. Reece again, asking her to email the Florida hospital system's credentialing team as to what the purported investigation was about, as well as any findings. Dr. Gudes received no response.

26. The day after that, Dr. Gudes contacted Dr. Eric Prenger, who was then the Chief of Staff for Wilson Memorial Hospital. Dr. Prenger told Dr. Gudes that the purported investigation was closed almost immediately. But neither Dr. Prenger nor anyone else provided Dr. Gudes any documentation about the investigation being closed or any of the findings from the investigation.

27. Dr. Prenger did say that he would make sure that Dr. McDevitt would reach out to the Chief of Staff at the Florida hospital system to explain what the purported investigation was about.

28. Three days later, on March 7, Dr. Gudes checked in with his director. The director told Dr. Gudes that the credentialing team had not heard any update from Wilson Health about the purported investigation.

29. The next day, Dr. Gudes contacted Dr. McDevitt by phone. Dr. McDevitt told Dr. Gudes that he reached out to the chief of staff at the Florida hospital system. Dr. Gudes asked Dr. McDevitt if he could send Dr. Gudes the investigation details and findings. Dr. McDevitt said he would "have to talk to his lawyer," and that "it could be a few days at least."

30. After this phone call, Dr. Gudes spoke with his director. In that conversation, Dr. Gudes learned that Dr. McDevitt had smeared Dr. Gudes's name, said he would never hire him, and made the false factual statements that Dr. Gudes had behavioral problems and a "bunch of bad cases."

31. Dr. McDevitt knew that his statements that Dr. Gudes had behavioral problems and a bunch of bad cases were false. Alternatively, at the very least, Dr. McDevitt made the statements with negligent or reckless disregard for their truth or falsity.

32. These statements caused Dr. Gudes harm to his reputation and harm in his profession.

6

33. On or about April 6, 2022, Wilson Health revised its NPDB report, stating that Dr. Gudes had allowed his privileges to expire while under investigation.

34. Even this revised statement was false, as Wilson Health knew that Dr. Gudes did not allow his privileges to expire while under investigation. Wilson Health knew that Dr. Gudes was resigning Wilson Health to accept a position at a different hospital system, as Dr. Gudes' director had communicated to Wilson Health well before the purported investigation.

35. On information and belief, Dr. McDevitt reported or directed the reporting of this false information to the NPDB in the February 28 and April 6 reports. The basis for this information and belief is that Dr. McDevitt was the Chief Medical Officer and chair of the Multidisciplinary Peer Review Committee, that Dr. McDevitt requested the purported investigation by the Medical Executive Committee, and that that Dr. McDevitt made related false statements about Dr. Gudes to the Florida hospital system as explained above.

36. Dr. McDevitt knew that the statements he made or directed to be made in the NPDB reports were false.

37. Alternatively, to the extent one or more other employees or agents of Wilson Health made or directed the statements in the NPDB reports, those employees or agents knew they were false. Those employees or agents took their actions in the course and scope of their employment or agency with the Wilson Health Defendants.

38. The false statements in the NPDB reports caused Dr. Gudes harm to his reputation and harm in his profession.

39. Because of the false statements detailed above, Dr. Gudes lost his position at the Florida hospital system.

40. Dr. Gudes has since applied for several additional positions at various hospitals. Because of the false NPDB reports by the defendants, he has had positions or offers revoked

7

(including from the Florida hospital system discussed above and another hospital system in New Mexico) and has been rejected from those positions.

### COUNT ONE – DEFAMATION
### (NPDB False Statements)

41. Dr. Gudes incorporates the above allegations by reference as if fully restated here.

42. The Wilson Health Defendants and their staff, including Dr. McDevitt, published false factual statements about Dr. Gudes in their NPDB reports as detailed above.

43. Defendants published these false statements with actual knowledge of their falsity. In the alternative, defendants published these false statements at least with negligent or reckless disregard for their truth or falsity.

44. Defendants are not entitled to any immunity for these statements because they had actual knowledge of their falsity, and further because defendants did not comply with the legal requirements prerequisite to immunity. For example, defendants did not provide Dr. Gudes notice of his right to request a hearing or the substantive or procedural rights he would have in such a hearing (*see* 42 U.S.C. § 11112). And despite knowing the reasons that Dr. Gudes had resigned his privileges—i.e., that he had given notice of his resignation well before the purported investigation because he was taking a new position in another state—defendants did not report the reasons for his resignation (*see* 42 U.S.C. § 11133(a)(3)(B)).

45. These false statements have caused Dr. Gudes damage to his reputation and in his profession, and have caused and continue to cause him substantial economic and noneconomic harm.

46. Dr. McDevitt or the other individuals who reported or directed these false statements did so within the course and scope of their employment or agency with the Wilson Health Defendants.

8

## COUNT TWO – DEFAMATION
### (Statements to Florida and New Mexico Hospital Systems)

47. Dr. Gudes incorporates the above allegations by reference as if fully realleged here.

48. Dr. McDevitt published false factual statements about Dr. Gudes to his Florida hospital system as detailed above, and substantially similar false statements to a New Mexico hospital system that had made an offer to Dr. Gudes.

49. Dr. McDevitt published these false statements with actual knowledge of their falsity. In the alternative, he published these false statements at least with negligent or reckless disregard for their truth or falsity.

50. These false statements have caused Dr. Gudes damage to his reputation and in his profession, and have caused and continue to cause him substantial economic and noneconomic harm.

51. Dr. McDevitt made these false statements within the course and scope of his employment or agency with the Wilson Health Defendants.

## COUNT THREE – TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACT/EMPLOYMENT

52. Dr. Gudes incorporates the above allegations by reference as if fully realleged here.

53. Through their actions described above, defendants have intentionally interfered with Dr. Gudes' prospective contract or employment with the Florida and New Mexico hospital systems mentioned above.

54. Defendants lack any privilege for their interference.

55. Defendants' tortious interference has caused and continues to cause Dr. Gudes substantial economic and noneconomic harm.

**WHEREFORE,** Dr. Gudes seeks judgment in his favor, and against all defendants jointly and severally, as follows:

    a.    For economic and noneconomic compensatory damages exceeding $75,000 in an amount to be determined at trial;

    b.    For punitive damages in an amount to be determined at trial;

    c.    For a permanent injunction requiring defendants to withdraw their adverse NPDB reports about Dr. Gudes;

    d.    For interest, costs, expenses, and attorney fees; and

    e.    For all other relief this Court deems proper.

Respectfully submitted,

/s/ Barton R. Keyes
Barton R. Keyes    (0083979)
bartk@cooperelliott.com
Cooper & Elliott, LLC
305 West Nationwide Boulevard
Columbus, Ohio 43215
(614) 481-6000
(614) 481-6001 Facsimile

Counsel for Plaintiff
Jeffrey S. Gudes, D.O.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

/s/ Barton R. Keyes